## YEAGER v. STATE.

### Opinion delivered March 19, 1928.

1. CRIMINAL LAW—SUFFICIENCY OF EVIDENCE.—Where there is any substantial testimony tending to support a verdict, the judgment of conviction will not be set aside; but, if there is no substantial evidence tending to connect the defendants with the commission of the crime, or if the evidence is purely speculative or conjectural, the verdict will be set aside.

2. INTOXICATING LIQUORS—MAKING MASH—SUFFICIENCY OF EVIDENCE.—Evidence *held* to sustain a conviction of unlawfully making and fermenting mash fit for distillation.

3. INTOXICATING LIQUORS—MAKING MASH—SUFFICIENCY OF EVIDENCE.—Where, in a prosecution for unlawfully making mash fit for distillation, the only evidence was that defendant was seen handing whiskey over a fence to his co-defendant, it was insufficient to sustain a conviction of the co-defendant for unlawfully making and fermenting mash fit for distillation.

Appeal from Miller Circuit Court; *J. H. McCollum,* Judge; reversed as to Ben Yeager; affirmed as to George Yeager.

*Dexter Bush* and *Will Steel,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

McHANEY, J. Appellants were indicted, tried, convicted and sentenced to one year each in the penitentiary on a charge of unlawfully making and fermenting mash

fit for distillation. They prosecute this appeal to reverse the judgment on the sole issue that the evidence is insufficient to support the verdict.

The rule of law governing this court on this assignment of error is that, if there is any substantial testimony tending to support the verdict, the judgment of conviction will not be set aside, for the reason that the guilt or innocence of the defendants is purely a question of fact for the determination of the jury. If, however, this court finds that there is no substantial evidence tending to connect the defendants with the commission of the crime, or if the evidence in this regard is purely speculative or conjectural, then it is the duty of this court to set aside the verdict. *Hogan* v. *State,* 170 Ark. 1145, 282 S. W. 984; *Cook* v. *State,* 173 Ark. 711, 293 S. W. 32; *Holford* v. *State,* 173 Ark. 998, 294 S. W. 33.

The evidence on behalf of the State, briefly stated, is that the officers had information that a still was being operated in the vicinity of the residence of the appellants, and, acting upon such information, they went into that locality and made a search. They found a still located from a half to one mile north of George Yeager's residence, and two large vats of mash. It had rained recently, and the officers found wagon tracks leading from the still into George Yeager's lot. They followed this wagon track from the still right in behind George's residence, where they found a wagon with a 3½-inch tire on it, which one of the officers said looked like the wagon that had made the trip to the still. Another road or trail led from George Yeager's house east through his field into a ravine, where a still-site was found. A vat was also found at the still-site containing a quantity of mash fit for distillation. Apparently the still had been moved, or was in the process of being removed, from the site east of the house to the place where it was found north of the house, and apparently the mash was being transported from the old to the new still, as the officers found mash scattered along the road where it had spilled from the containers while being transported, and this condi-

tion existed right up to George Yeager's house. Two of the officers saw Ben Yeager and George in the field back of George's house, Ben being on the inside and George on the outside of the fence, and Ben was handing whiskey over the fence to George in half-gallon containers. They halloed at them, and George ran away. The officers found some broken half-gallon containers of moonshine whiskey, and they found Ben with a half-gallon still unbroken. These are substantially all the facts that tend to connect either of them with the unlawful possession of mash fit for distillation.

Under this state of the record, we are of the opinion that the evidence was sufficient to go to the jury on the question of the guilt or innocence of George Yeager, but was insufficient as to Ben. Ben lived with his brother Gus a mile and a half to the southwest of George's place, and the only evidence in the record tending to connect him with any offense was the fact that he was handing liquor over the fence to George. This might have been sufficient on a charge of possessing and transporting, but certainly was insufficient to show that he ever had anything to do with the making or possessing of the mash for which he was indicted. While it may be true, as the jury has found, that Ben is equally guilty with George on the charge against him, yet there is no substantial testimony in the record to show that he was guilty. The jury, in order to convict him, would have to deal purely with speculation and conjecture, which are insufficient in law to justify a conviction.

The judgment of conviction as to George Yeager will therefore be affirmed, and as to Ben Yeager it will be reversed, and remanded for a new trial.